## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARY LOUISE CATLIN | * | |
| | * | |
| v. | * | Civil Case No. RDB-15-929 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered both parties' dispositive motions. [ECF Nos. 10, 11]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Catlin's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Catlin filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she became disabled on September 13, 2011. (Tr. 172-89). Her applications were denied initially and on reconsideration. (Tr. 82-92, 94-105, 107-19). An Administrative Law Judge ("ALJ") held a hearing on February 14, 2014. (Tr. 41-81). Following the hearing, the ALJ determined that Ms. Catlin was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 19-40). The Appeals Council

denied Ms. Catlin's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, during the relevant period, Ms. Catlin suffered from the severe impairments of ischemic heart disease, peripheral vascular (arterial) disease, restless leg syndrome, degenerative disc disease, status post lumbar fusion, tobacco abuse, substance abuse, depression, and anxiety. (Tr. 24). Despite these impairments, the ALJ determined that Ms. Catlin retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she could lift/carry 10 to 15 pounds occasionally and up to 10 pounds frequently, could stand and walk three or more hours but less than six hours in a given workday, requires a sit/stand option, could sit as much as six hours in a given workday, and can stoop, crouch, crawl, kneel, squat, balance, and climb stairs no more than occasionally. The claimant's work should not require use of ladders, dangerous heights, or dangerous machinery, nor that she have concentrated exposure to heat or cold, dust, fumes, gases or vibrations. The claimant can understand, remember, and carry out simple, SVP 1 or SVP 2 level instructions. The claimant is able to perform within a schedule, be on time, produce an adequate amount of work, and limit breaks to times permitted. She can sustain as much as occasional interaction with supervisors and the general public.

(Tr. 27). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Catlin could perform several representative light jobs existing in significant numbers in the national economy. (Tr. 34). Therefore, the ALJ concluded, Ms. Catlin was not disabled. *Id.*

Ms. Catlin disagrees. She raises two primary arguments on appeal: (1) that the ALJ erred in assigning weight to the opinions of medical sources; and (2) that the ALJ erred in assessing her credibility. Each argument lacks merit.

Ms. Catlin argues that the ALJ did not assign sufficient weight to the opinion of her treating physician, Dr. Walsh, and to the opinion of an examining physician, Dr. Barrish. Pl. Mot. 12-13. Dr. Walsh saw Ms. Catlin on just three occasions after the alleged disability onset date. (Tr. 473-75). The treatment notes from each of those visits indicates that Ms. Catlin's

2

physical examinations were entirely within normal limits.  *Id.*  Those treatment notes therefore stand in stark contrast to Dr. Walsh's opinion that Ms. Catlin was entirely unable to return to work in any capacity, can never lift or carry anything, and can only sit and stand, respectively, for 0-1 hours in an eight hour workday.  (Tr. 464-71).  Nothing in the remainder of Ms. Catlin's medical records serves to corroborate such a restrictive assessment of Ms. Catlin's physical capabilities.   Thus, the ALJ appropriately assigned supported his assignment of "little weight" to Dr. Walsh's opinion.  (Tr. 32).

Ms. Catlin further contends that the ALJ should have credited the opinion of the consultative examiner, Dr. Barrish, who found her to be capable of performing sedentary work.[1] Dr. Barrish's opinion differs from the RFC assessment determined by the ALJ in two primary respects.   First, Dr. Barrish believed that Ms. Catlin could sit for 6-8 hours per day and stand/walk for 0-1 hours, while the ALJ found her to be capable of standing and walking 3-6 hours.  *Compare* (Tr. 27) *with* (Tr. 458).   In the end, however, because the ALJ's RFC assessment included an option to sit or stand at will, that discrepancy is immaterial.  Second, Dr. Barrish stated that Ms. Catlin could lift and carry no weight frequently and up to 5 pounds occasionally, while the ALJ determined that she could lift/carry 10 to 15 pounds occasionally and up to 10 pounds frequently.  *Id.*  In rejecting that portion of Dr. Barrish's opinion, the ALJ noted that Dr. Barrish's "opinion and findings conflict with the clinical findings reported by the claimant's treating physicians over a longitudinal period."  (Tr. 33).   Specifically, throughout the opinion, the ALJ relied upon (1) Dr. Crouch's treatment notes including normal physical examination (except for knee swelling and back tenderness) (Tr. 28); (2) Dr. Walsh's normal physical examinations (Tr. 30); (3) relatively unremarkable findings on objective testing (Tr. 28-

---

[1] Ms. Catlin's suggestion that Dr. Barrish "agreed with the limitations described by the treating doctor" is unfounded.  Pl. Mot. 13.  Dr. Barrish believed Ms. Catlin to be capable of sedentary work, with certain limitations, while Dr. Walsh rendered a more extreme opinion suggestion that she could not work at all.

32); and (4) the fact that Ms. Catlin engaged in heavy yard work during the period she alleged disability.  (Tr. 29).

Ms. Catlin also references the fact that the ALJ did not accept the opinions of two non-examining doctors who, like Dr. Barrish, believed Ms. Catlin to be capable of only sedentary work.  Pl. Mot. 13-14.  In this case, the ALJ did not adopt the entirety of the opinion of any medical source.  Instead, the ALJ assigned "little" or "partial" weight to each source, and used evidence of record to explain findings that are more restrictive than some of the sources' opinions and less restrictive than others.  While there is evidence in the record that could be marshaled to support a finding of disability (or at least a finding that a sedentary RFC would be appropriate), this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).    The ALJ's extensive analysis in this case provides ample basis for that finding.

Finally, Ms. Catlin contests the ALJ's adverse credibility finding.  Pl. Mot. 15-16.  The ALJ cited numerous examples to support her assessment that Ms. Catlin was not fully credible, including (1) the fact that Ms. Catlin testified that she was "up for a pacemaker" where her physician's notes stated that a pacemaker was not indicated; (2) that Ms. Catlin testified at the hearing that she only used cocaine one time in 2009, where a 2010 toxicology screen was positive for cocaine; and (3) the fact that Ms. Catlin started smoking after her heart attack, and continues to smoke marijuana regularly, against the advice of her physicians.  (Tr. 28).  The credibility determination made by an ALJ warrants substantial deference, and should not be disturbed absent "exceptional circumstances."  *Bishop v. Comm'r of Soc. Sec.,* 583 Fed. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB,* 132 F.3d 1007, 1011 (4th Cir. 1997)).  Such

circumstances included cases where the credibility determination "is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Eldeco,* 132 F.3d at 1011 (internal quotations omitted).  While Ms. Catlin appropriately notes that the pacemaker testimony could possibly be attributed to a misunderstanding, the remaining reasons are valid and are documented in the medical record.  Thus, I find no exceptional circumstances, and recommend that the ALJ's credibility determination be accepted.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1.   The Court DENY Plaintiff's Motion for Summary Judgment  [ECF No. 10];

2.   the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 11];

3.   the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  December 10, 2015                          _____/s/_____

                                                   Stephanie A. Gallagher
                                                   United States Magistrate Judge